IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD MUCCIGROSSO,

        Plaintiff,

      v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

        Defendant.

_____

Civ. No. 3:14-cv-01370-MC

OPINION AND ORDER

MCSHANE, Judge:

      Plaintiff Donald Muccigrosso brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The issues before this Court are: (1) whether the Administrative Law Judge (ALJ) erred in evaluating the opinion of treating neurological surgeon, Dr. Brett; and (2) whether the ALJ erred in evaluating plaintiff's credibility. Because the residual functional capacity (RFC) did not incorporate functional limitations on repetitive lifting, bending and stooping, or sitting in a stationary position, the Commissioner's decision is REVERSED and this matter is REMANDED for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB and SSI on August 3, 2010, alleging disability since May 18, 1998 (later amended to December 31, 2005). Tr. 16, 39, 187–197. These claims were denied initially and upon reconsideration. Tr. 11, 125–32, 137–41. Plaintiff timely requested a hearing before an ALJ, and appeared before the Honorable Riley J. Atkins on December 12, 2012, tr. 16, 34–74. ALJ Atkins denied plaintiff's claims by a written decision dated December 21, 2012. Tr. 16–28. Plaintiff sought review from the Appeals Council, which was subsequently denied, thus rendering the ALJ's decision final. Tr. 1–3. Plaintiff now seeks judicial review.

Plaintiff, born on November 24, 1959, tr. 26, 40, 187, 191, graduated from a four-year university, tr. 40, and worked most recently as a registered nurse, tr. 47, 201–02. Plaintiff was forty-six at the time of alleged disability onset, and fifty-three at the time of his administrative hearing. *See* tr. 26, 40, 187, 191. Plaintiff alleges disability due to: status post ankle fusion/arthrodesis; right shoulder AC joint arthrosis; and degenerative disk disease with history of laminectomy. *See* tr. 18, 21, 325–36.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests

2 – OPINION AND ORDER

upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's RFC, age, education, and work experience. *Id.*

Plaintiff contends that the ALJ's disability decision is not supported by substantial evidence and is based on an application of incorrect legal standards. In particular, plaintiff argues that: (1) the ALJ erred in evaluating the opinion of treating neurological surgeon, Dr. Brett; and (2) the ALJ erred in evaluating plaintiff's credibility.

## I. Dr. Brett's Medical Opinion

Plaintiff contends that the ALJ erred in evaluating functional limitations identified by Darrell C. Brett, M.D. *See* Pl.'s Br. 5–9, ECF No. 12. In response, defendant argues that the ALJ's RFC findings are "fully consistent" with Dr. Brett's opined functional limitations. *See* Def.'s Br. 5–8, ECF No. 13. Because the ALJ expressly adopted Dr. Brett's findings and provided no reason for partial rejection, the issue is whether the RFC incorporated Dr. Brett's opined functional limitations. *See* tr. 25 ("I give this opinion great weight. . . .").

Plaintiff met with Dr. Brett, who is a neurological surgeon, approximately eight times between May and October 2006 to treat back and leg pain arising from a motor vehicle accident that occurred on December 8, 2005.[1] Plaintiff underwent an extensive lumbar laminectomy on June 14, 2006. Tr. 305.

---

[1] *See* tr. 300, 303–04 (5/4/2006); tr. 308–11 (5/15/2006); tr. 298 (5/18/2006); tr. 295, 314 (5/22/2006); tr. 297, 301–02, 305–07 (6/14/2006); tr. 294 (6/22/2006); tr. 294, 314 (8/29/2006); tr. 296, 313 (10/12/2006).

On June 22, 2006, plaintiff met with Dr. Brett for a follow up appointment. Upon assessment, Dr. Brett reported the following:

> [Plaintiff] returns today doing very nicely with resolution of all radicular pain, and he is very pleased with the results of surgery. He has no objective neurologic deficit. His wounds are healing well. . . . He should remain off work and can gradually increase his activities at home, and he is given instructions regarding abdominal and back strengthening exercises and the principles of back mechanics. . . . He will be reassessed in six weeks.

Tr. 294.

On August 29, 2006, plaintiff met with Dr. Brett for a reassessment. At that time, plaintiff continued to improve and was released to return to modified light work: "[h]e can return to light work provided he not lift or carry more than 25 lbs., perform any repetitive lifting, bending or stopping, or be required to sit or stand in a stationary position for more than two consecutive hours." Tr. 294.

On October 12, 2006, Dr. Brett performed a final assessment of plaintiff. *See* tr. 296. Dr. Brett noted that plaintiff experienced continued low back discomfort and occasional paresthesia[2] on the left leg, and had reduced lumbar range of movement. *Id*. Dr. Brett opined: "[h]e will have a moderate permanent partial disability in that he should not lift or carry more than 35 lbs., perform any repetitive lifting, bending or stooping, or be required to sit or stand in a stationary position for more than two consecutive hours." *Id*. Plaintiff was found to be medically stationary. *Id*.

Plaintiff contends that Dr. Brett's opined functional limitations on repetitive lifting, bending and stooping, and sitting in a stationary position were not adequately incorporated into

---

[2] "Paresthesia" is defined as "[a] spontaneous abnormal usually nonpainful sensation (e.g., burning, pricking)." *Stedman's Medical Dictionary* 1425 (28th ed. 2006).

the RFC. Plaintiff believes that if these limitations are properly incorporated into the RFC, he cannot perform the three occupations identified by the ALJ at step five of the sequential evaluation, i.e., medical assistant (DOT § 079.362-010), hospital admitting clerk (DOT § 205.362-018), and medical case manager (DOT § 195.107-030).

> Turning to the RFC, the ALJ found that plaintiff was able to:
>
>> [P]erform a mixed range of light and sedentary work. He can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and walk with normal breaks approximately two of eight workday hours and sit up to six of eight workday hours. He should not be required to climb other than stairs and ramps. He can occasionally stoop. He should not be required to engage in over the shoulder work.

Tr. 20; *see also* tr. 69–70.

Plaintiff argues that the RFC does not account for Dr. Brett's opined limitation on repetitive lifting, bending and stooping. Defendant, in response, looks for comparable restrictions in the "sedentary work" classification. As identified above, the ALJ determined that plaintiff was capable of performing three occupations: medical assistant (DOT § 079.362-010), hospital admitting clerk (DOT § 205.362-018), and medical case manager (DOT § 195.107-030). Defendant relies on the latter two sedentary occupations, and argues that their sedentary classification incorporates Dr. Brett's opined limitation on repetitive lifting, bending and stooping.

"Sedentary work," as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a), "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." "Occasionally," as used in the definition of "sedentary work," is defined as "occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday." SSR 96-9, 1996 WL 374185, at *3 (July 2,

5 – OPINION AND ORDER

1996). This Court, having reviewed these definitions, is reluctant to find that a "sedentary work" classification *alone* is sufficient to incorporate a limitation on "*any* repetitive lifting, bending or stooping." Tr. 296 (emphasis added). The relevant case law, which was not addressed by either party, is split on the issue. On the one hand, there is a group of cases that reject such reasoning and rely on a footnote in *Gardner v. Astrue*, 257 Fed. Appx. 28 (9th Cir. 2007).[3] That footnote provides:

> Although we do not base our holding on this point, we note that "repetitively" in this context appears to refer to a qualitative characteristic—i.e., how one uses his hands, or what type of motion is required—whereas "constantly" and "frequently" seem to describe a quantitative characteristic—i.e., how often one uses his hands in a certain manner. Under this reading, a job might require that an employee use his hands in a repetitive manner frequently, or it might require him to use his hands in a repetitive manner constantly. The VE's testimony suggests that someone who cannot [] use his hands constantly in a repetitive manner, but can use his hands frequently in a repetitive manner, could perform the jobs of electronics worker and marker. The ALJ's RFC finding, however, suggested that Gardner should not use his hands in a repetitive manner at all, whether constantly or frequently. Under this interpretation of the relevant terms, the ALJ's step-five finding that Gardner could perform the jobs of electronics worker and marker would be erroneous. The ALJ should clarify his use of these terms on remand.

257 Fed. Appx. at 30 n.5.

---

[3] *See, e.g., Rojas-Gonzalez v. Colvin*, No. CV 13–7111–PLA , 2014 WL 3899462, at *9 n.12 (C.D. Cal. Aug. 8, 2014) ("The ALJ's error . . . cannot be considered harmless because at least one of the limitations opined . . . prohibition from 'repetitive gripping and grasping'—was not included in the hypotheticals posed to the VE."); *Jacques v. Colvin*, No. CV 12–2550–SP, 2013 WL 812100, at *5 (C.D. Cal. Feb. 25, 2013) ("[A] limitation to occasional manipulation on the left, as included in the ALJ's RFC, may not account for [a] limitation to no repetitive gripping on the left."); *Ceballos v. Astrue*, No. CV 11–08632 AGR, 2012 WL 4951155, at *5 (C.D. Cal. Oct. 17, 2012) ("The problem, however, is that the ALJ's hypothetical to the VE did not contain the limitation on repetitive fine and gross manipulation. . . . Therefore, it is unknown whether Ceballos can perform her past relevant work with that limitation."); *Dandreo v. Astrue*, Civil No. 09–347–P–H, 2010 WL 2076090, at *4–5 (D. Me. Mar. 25, 2010) ("I am persuaded . . . that there is at minimum a facial ambiguity, rendering it unclear whether a person restricted from repetitive fine manipulation can perform requiring frequent fingering.").

On the other hand, there are also cases that accept such reasoning, concluding that a limitation on repetitive activity is not inconsistent with frequent or occasional activity.[4] For example, in *LeFevers v. Comm'r of Soc. Sec.*, 476 Fed. Appx. 608 (6th Cir. 2012), the Sixth Circuit assessed whether an opined limitation on repetitive lifting was inconsistent with light work as defined in 20 C.F.R. § 404.1567(b). The Sixth Circuit concluded that:

> Dr. Dubin is not an agency doctor, and nothing indicates he was using the term "repetitive"—or not using the term "frequent"—in any technical sense. In ordinary nomenclature, a prohibition on "repetitive" lifting does not preclude a capacity for "frequent" lifting, as the district court held. No reversible inconsistency exists.

476 Fed. Appx. at 611.

Faced with such limited briefing, this Court declines to find that the ALJ's failure to include a limitation on repetitive lifting, bending and stooping within the RFC was merely harmless. *See Ceballos*, 2012 WL 4951155, at *5. A limitation to occasional lifting and occasional stooping, as included in the sedentary classification and the ALJ's RFC, may not account for a limitation on *any* repetitive lifting, bending or stooping. *See Jacques*, 2013 WL 812100, at *5.[5]

Plaintiff also argues that the RFC does not account for Dr. Brett's opined restriction on sitting in a stationary position for more than two consecutive hours. *See* Pl.'s Br. 8, ECF No. 12;

---

[4] *See, e.g.*, *Jimenez v. Colvin*, No. CV 13–8676 SS, 2014 WL 5464949, at *9, 11–13 (C.D. Cal. Oct. 28, 2014) (concluding that an RFC restriction to "frequently handle and finger with both hands" was not inconsistent with an opined limitation of "no repetitive pushing or pulling with hand/wrist, [and] no repetitive finger/wrist motions"); *Everett v. Astrue*, No. 1:10–cv–1831 LJO–BAM, 2012 WL 1965958, at *14 (E.D. Cal. May 31, 2012) ("[T]he Court cannot say that the ALJ's finding that Plaintiff should perform 'no more than frequent handling and fingering with the left hand' is inconsistent with Dr. Hernandez's opinion that Plaintiff should 'avoid repetitive handing and fingering with the left hand.'"); *Lobato v. Astrue*, No. C–10–02022 JCS, 2011 WL 4712212, at *10 (N.D. Cal. Oct. 7, 2011) (concluding that a proscribed prohibition on repetitive lifting was properly addressed where plaintiff was restricted to: occasionally balancing, stooping, kneeling, crouching, crawling, and climbing; lifting 10 pounds occasionally and less than 10 pounds frequently; and sedentary work).

[5] This harmful error conclusion is based in part on limitations in the respective briefings and the ALJ's additional failure to incorporate sitting limitations within the RFC.

Pl.'s Reply Br. 2, ECF No. 14. Defendant again, in reliance on the definition of "sedentary work," contends that this classification incorporates Dr. Brett's limitation on sitting in a stationary position. Defendant directs this Court's attention to an administrative policy interpretation, SSR 96-9P, which provides in relevant part:

> **Sitting:** In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, *with* a morning break, a lunch period, and an afternoon break at approximately *2-hour intervals*. If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded.

1996 WL 374185, at *6 (July 2, 1996) (emphasis added). This Court is reluctant to find that a policy interpretation, SSR 96-9P, is sufficient to incorporate a limitation on sitting in a stationary position for more than two consecutive hours. First, the policy interpretation sets forth an *approximation*. There is nothing in the record to indicate whether either sedentary position actually adheres to such an approximation. Second, the ALJ, in posing hypothetical questions to the vocational expert (VE), omitted any reference to "normal breaks" when articulating the hypothetical claimant's ability to sit. *See* tr. 69 ("[The hypothetical claimant] can sit up to six hours in the work day."). This omission is particularly troubling because the ALJ included this restriction when discussing that same hypothetical claimant's ability to stand and walk. *Id.* ("This hypothetical claimant can stand and walk with normal breaks approximately two hours during the work day.").

Accordingly, because the ALJ did not include these functional limitations in the hypothetical question posed to the VE, this matter is remanded for further proceedings. *See Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) ("Hypothetical questions asked of the

vocational expert must set out all of the claimant's impairments." (citation and internal quotation marks omitted)).

## II. Plaintiff's Testimony

Plaintiff contends that the ALJ improperly rejected his testimony. Pl.'s Br. 9–13, ECF No. 12. In response, defendant argues that the ALJ's findings are supported by substantial evidence. Def.'s Br. 8–12, ECF No. 13.

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 C.F.R. §§ 404.1529, 416.929. "In deciding whether to accept [this testimony], an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). If a claimant meets the *Cotton* analysis[6] and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). This Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citations omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citations omitted).

The ALJ found that plaintiff's statements concerning his alleged limitations were not credible to the extent that they were inconsistent with the RFC. *See* tr. 21–24. In making this determination, the ALJ relied on three bases, including: (1) plaintiff's course of treatment; (2) plaintiff's work history; and (3) plaintiff's activities of daily living.

---

[6] "The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407–08 (9th Cir. 1986)).

First, the ALJ found that plaintiff's received "conservative and routine treatment in recent years." Tr. 24. The ALJ explained:

> [Plaintiff] has taken Tylenol, Ibuprofen, and marijuana to treat pain more recently, but claims [he] cannot afford cannabis now. There is no medical marijuana card in evidence. Despite chronic marijuana use, the claimant testified he "absolutely live[s] in abject misery with this pain." He continued, "I know what living in pain is, and it's . . . it's my life." His testimony indicates he has continued to use marijuana without a medical marijuana card even though it has no effect on his level of pain. The medication in this case is therefore not consistent with the alleged severity of his impairments. He testified he does not use prescribed pain medication because the side effects are worse than the underlying condition. His conservative treatment does not reveal a need for functional limitations greater than indicated in the [RFC].

*Id.* This finding, if supported in the record, can support an adverse credibility determination. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) ("Meanel's claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received.").

Plaintiff argues that the ALJ erred in considering plaintiff's proffered explanation and limited financial resources. *See* SSR 96-7P, 1996 WL 374186, at *7–8 (July 2, 1996) (recognizing intolerable side effects and limited financial resources as explanations that "may provide insight into the individual's credibility").

As to plaintiff's proffered explanation, plaintiff testified that he discontinued pain medications because they "ruined [his] life. . . . [His] digestion system." Tr. 59; *see also* tr. 63 ("You'd rather deal with the pain - - it sounds like you'd rather deal with the pain and the mental rather than be on medication."). The ALJ, having considered this explanation, determined that

plaintiff's treatment did not reveal a need for functional limitations greater than indicated in the RFC. Tr. 24. This inference, when considered in light of the alleged severity of symptoms—"on a scale of one to ten . . . Ten. . . . Agony. . . . I absolutely live in abject misery with this pain," tr. 60—and plaintiff's failure to seek an alternative, more-tailored treatment program, was permissible under the case law, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("[The ALJ] inferred that Tommasetti's pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive program . . . after he stopped taking an effective medication due to mild side effects. This is a permissible inference.").

As to limited financial resources, plaintiff testified that as an Oregon Health Plan (OHP) recipient, he was denied coverage for physical therapy and related rehabilitation services following his lumbar laminectomy on June 14, 2006. *See* tr. 53–54, 68; *see also* tr. 411 (3/31/2010); tr. 406 (1/13/2011). Plaintiff also testified that he had struggled to reestablish care following his discharge from Legacy Clinic Good Samaritan in 2012 because of limitations in OHP coverage. *See* tr. 68. These coverage limitations, although relevant as to physical therapy, *see Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007), shed little light on plaintiff's repeated failure to seek an alternative, more-tailored treatment program. Plaintiff, who received treatment for various ailments between June 2006 and January 2011,[7] did not seek such a tailored treatment program for his "abject misery." As a result, plaintiff's course of treatment can reasonably be considered "conservative" in light of the severity of the alleged symptoms.

Second, the ALJ found that plaintiff had a "sporadic work history" and lacked the "motivat[ion] to work consistently." Tr. 24. Again, this finding, if supported in the record, can

---

[7] *See, e.g.*, tr. 418–19 (2/12/2008); tr. 416–17 (4/23/2008); tr. 414–15 (5/5/2008); tr. 412 (9/30/2008); tr. 396–98 (11/18/2010); tr. 406–08 (1/13/2011).

support an adverse credibility determination. *See Thomas*, 278 F.3d at 958 (determining that an ALJ properly considered a claimant's "extremely poor work history" in weighing that claimant's credibility). Because the parties dispute the ALJ's assessment of the factual record, this Court provides the following timeline:

**1.** In 1992, plaintiff earned $1,847.37. Tr. 200.

**2.** In 1993, plaintiff earned $111.39. *Id.*

**3.** In 1994, plaintiff earned $2,483.58. *Id.*

**4.** In 1995, plaintiff did not earn any income. *Id.*

**5.** Between 1996 and 1999, plaintiff attended nursing school. *See* tr. 40, 46, 219.

> **5a.** On May 18, 1998, plaintiff injured his right shoulder and right ankle in a motorcycle accident. *See* tr. 40–43. Plaintiff originally alleged disability beginning May 18, 1998 (later amended to December 31, 2005).

> **5b.** In 1999, plaintiff earned $5,202.53. Tr. 200.

**6.** In 2000, plaintiff earned $14.36. *Id.*

**7.** In 2001, plaintiff earned $4,877.40. *Id.*

**8.** In 2002, plaintiff earned $12,641.45. *Id.*

**9.** In 2003, plaintiff earned $13,310.92. *Id.*

**10.** In 2004, plaintiff earned $29,065.72. *Id.*

**11.** In 2005, plaintiff earned $10,842.00. *Id.* In December 2005, plaintiff was injured in a motor vehicle accident. *See* tr. 303. Plaintiff alleges disability beginning December 31, 2005.

**12.** In 2006, plaintiff earned $825.00. Tr. 200. In June 2006, plaintiff underwent a lumbar laminectomy. Tr. 305.

Plaintiff contends that the ALJ erred in considering this work history. In particular, plaintiff argues that the ALJ failed to consider plaintiff's enrollment "in college and nursing school from 1996 to 1999," and his earned income between 2002 and 2005. Pl.'s Br. 11, ECF No. 12. Plaintiff's school enrollment and increased earnings, although relevant to his work motivation, do not preclude the ALJ's motivation findings.

Plaintiff, who was born in 1959, did not earn more than $5,000 until 1982. *See* tr. 26, 49. Between 1992 and 2001, plaintiff earned less than $5,200 each year. *See* tr. 49, 200. Plaintiff, when asked to explain his work history, admitted that he had "very minimal work history." Tr. 49; *see also* tr. 50 ("Q. But you just don't have much of a work history. A. I don't. . . ."). The ALJ, in reliance on these statements and plaintiff's earning record, reasonably determined that "this evidence suggests factors other than [plaintiff's] alleged impairments affect his ability to maintain fulltime employment." Tr. 24; *see also Amundson v. Colvin*, No. 1:13–cv–01286–PK, 2014 WL 4162527, at *11 (D. Or. Aug. 18, 2014) ("To the extent that [plaintiff's] dearth of reported income in the years preceding his alleged disability onset date can be explained by his being paid 'under the table,' [plaintiff's] dishonesty in failing to report his earnings and pay income taxes only further supports the ALJ's adverse credibility determination.").

Third, the ALJ found that plaintiff's activities of daily living were not consistent with the alleged degree of impairment. Tr. 24. The ALJ explained:

> [H]is daily activities are quite involved. The claimant told his treating provider in December 2007 he was exercising in an effort to lose weight. He testified he plays guitar in public for tips. He carries his guitar. He lives independently. He performs household chores. He shops in stores for groceries. He prepares meals daily. He manages finances. He watches television. He commutes by driving, receiving rides from others, and using public transportation. He welcomes friends into his home. He visits coffee shops regularly. These activities are consistent with the . . . [RFC]

> assessment and are inconsistent with the claimant's allegations. They suggest greater functioning that alleged in his application and testimony.

Tr. 24 (citations omitted). An ALJ may rely on daily activities to form the basis of an adverse credibility determination if those activities contradict a plaintiff's testimony or involve the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Defendant contends that plaintiff's "daily activities are inconsistent with the degree of limitation he described." Def.'s Br. 9, ECF No. 13. This Court briefly looks to the record.

On October 19, 2010, plaintiff reported that he was unable to stand for more than a few minutes, tr. 237, and unable to walk more than 50 yards before needing to stop and rest, tr. 241. On December 12, 2012, plaintiff testified that that he was unable to: "sit for more than a few minutes"; "stand for more than a couple of minutes"; and lift more than "five or six pounds." Tr. 54, 58–59, 61.

Plaintiff's functionality, as evidenced by his daily activities, is greater than alleged. Plaintiff prepares meals for himself daily; he performs household chores, e.g., he cleans dishes and takes out the garbage; he shops for groceries twice weekly; he commutes by driving, receiving rides from others, and using public transportation daily; he plays the guitar two to three times each week for tips; and he receives friends at his apartment one to two times each week. Tr. 238–40. The ALJ, having considered this evidentiary record, reasonably determined that many of plaintiff's statements relating to functionality were inconsistent with his daily activities; thereby undermining his credibility.[8]

## III. Remand

---

[8] In any event, plaintiff did not challenge this finding in his opening brief or reply brief. As a result, this issue has been waived. *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).

This Court has "discretion to remand a case either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292 (citing *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)). Generally, the "decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (citing *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). To remand for an award of benefits, three elements must be satisfied:

> (1) The record has been fully developed and further administrative proceedings would serve no useful purpose;
>
> (2) The ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and
>
> (3) If the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

The errors identified by this court—the ALJ's failure to incorporate functional limitations relating to repetitive lifting, bending and stooping, and sitting in a stationary position—are reversible. These errors, however, do not meet the third element identified above. This Court has not been provided with any information or evidence indicating that a disability finding would be *required* on remand if credited. Accordingly, this matter is remanded under sentence four of 42 U.S.C. § 405(g) for further proceedings. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("'[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" (quoting *Immigration & Naturalization Serv. v. Ventura*, 537 U.S. 12, 16 (2002)).

## CONCLUSION

For these reasons, the Commissioner's final decision is REVERSED and this matter is REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings. It is hereby ordered, upon remand:

**1.** The ALJ shall revise plaintiff's RFC to reflect functional limitations on repetitive lifting, bending and stooping, and sitting in a stationary position.

**2.** The ALJ shall make new findings under step five of the sequential evaluation and obtain supplemental VE evidence.

IT IS SO ORDERED.

DATED this 30th day of June, 2015.


_____s/Michael J. McShane_____
**Michael J. McShane**
**United States District Judge**

16 – OPINION AND ORDER